In the United States District Court for the Northern District of Florida

Tallahassee Division

Case No: 4:25 cv 271 - RH/MJF

Joshua-Michael Van Schaick

    *Plaintiff,*

    v.

Ron DeSantis as the Governor of the State of Florida,

et al,

James Uthmeier as the Attorney General of the State of Florida,

Florida Department of Management Services,

Florida Department of Environmental Protection,

United States Department of Homeland Security,

United States Immigration and Customs Enforcement,

    *Defendant(s).*

_____/

## Verified Complaint for Preliminary and Permanent Injunction

Plaintiff Joshua-Michael Van Schaick appearing *In Rem Suam, Propria Persona-Sui Juris* hereby challenges jurisdiction and files for entry this Verified Complaint for Preliminary and Permanent Injunction against the Defendants, and alleges as follows:

### Introduction

This is an action for injunctive relief to restrain ultra vires and unconstitutional trespass on lands held under United States patent, referred to in public discourse as "Everglades Alcatraz." The Plaintiff seeks to enjoin the establishment or support of a federal detention facility on sovereign

Page **1** of **18**
Van Schaick v. DeSantis, et al; Defendants-Verified Complaint for Preliminary and Permanent Injunction

FILED USDC FLND TL  BF
JUN 26 '25 PM3:26

private property, immune from federal and State jurisdiction under patent law. Plaintiff seeks judicial relief to prevent irreparable harm, trespass, and constitutional violations by which Plaintiff is sure Defendants un-knowingly acted in error and lack In Rem jurisdiction. Plaintiff exercises his secured Rights under Amendment IX & X to Petition this Honorable Court pursuant to Amendment I of the Constitution for the United States of America.

### I. Jurisdiction and Venue

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action involves rights protected under the Supremacy Clause of the Constitution for the United States of America and federal patent law.

2. 28 U.S.C. § 1338(a) — Patents and Exclusive Jurisdiction wherein No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents. While §1338 primarily refers to inventions and copyrights, courts have applied federal question jurisdiction under §1331 to land patents because they derive from Acts of Congress and fall under the Property Clause of Article IV Section 3 Clause 2 of the Constitution for the United States of America.

3. Florida courts also recognize that issues concerning the validity, construction, or effect of land patents are matters of federal law, not state law. *Andrus v. Charlestone Stone Products Co., 436 U.S. 604 (1978).*

4. Venue is proper in the Northern District of Florida under 28 U.S.C. § 1391(e)(1)(A) and (B). The State of Florida and its component agencies which were created by an Act of Congress pursuant to Article I Section 8 Clause 17 and Article IV Section 3 Clause 1, being fully incorporated into composite States pursuant to Title 28 U.S.C. § 89, existing within

that space and plane of jurisdiction (*Ponzi v. Fessenden*) subsequent to President Franklin D. Roosevelt's New Deal, have their principal place of business within this judicial district. Governor Ron DeSantis and Attorney General James Uthmeier also reside and have their principal place of business within this judicial district, wherein a substantial part of the acts and omissions giving rise to this action occurred within this judicial district. Wherein the United States and its component agencies herein are named as a party, venue is proper in the Northern District of Florida as a substantial part of the events or omissions occurred within this judicial district. The U.S. District Courts have subject matter jurisdiction to review a cause of action when Defendants who are constitutional officers, whether they be *de jure* or *de facto*, are acting inside of a federally defined district and are subject to the jurisdiction thereof and have acted arbitrary to the laws established by the Constitution for the United States of America and Acts of Congress, whereas these facts support that judicial district integration supports direct constitutional oversight of state agencies as well as federal agencies pursuant to the Law of Agency.

5. Although the land in question lies wholly outside of the territorial jurisdiction of any judicial district by virtue of a sovereign land patent, this Court retains jurisdiction under the above venue provisions because the challenged conduct originates within this district and the injunctive relief sought pertains to conduct occurring within this district, consistent with 28 U.S.C. § 1391(e)(1)(B), regardless of the extrajudicial location of the land at issue.

## II. Parties

### Plaintiff

6. Joshua-Michael Van Schaick, is a Native state Citizen of Florida and is a lawful successor in interest and a beneficial and equitable title holder of rights derived under United States Patent No. 137, originally granted under the authority of Congress, held in fee simple and beyond the reach of both state and federal regulatory authority. Plaintiff Joshua-Michael Van Schaick is appearing *In Rem Suam, Propria Persona Sui Juris Standing- Jus Soli-* On Soil as a Native Inhabitant of Florida.

### Defendant(s)

7. Ron DeSantis is the Governor of the State of Florida and is being sued in his official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held land.

8. James Uthmeier is the Attorney General of the State of Florida and is being sued in his official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held land.

9. The Florida Department of Management Services (DMS) is the state agency responsible for managing real property and capital construction projects and is being sued in its official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held lands.

10. The Florida Department of Environmental Protection (DEP) is the agency responsible for environmental regulation, permitting, and Everglades oversight and is being sued in its official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held lands.

11. The United States Department of Homeland Security (DHS) is the federal agency involved in planning and intended use of the facility and is being sued in its official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held lands.

12. The United States Immigration and Customs Enforcement (ICE) is an operational arm of DHS and is sued in its official capacity for actions taken and supported in furtherance of an unconstitutional and unlawful incursion onto privately held lands.

### III. Factual Background

13. The property in question is subject to a duly recorded patent issued by the United States of America, binding under seal and autographed by President Theodore Roosevelt which transferred all right, title, and interest in the land from the United States to the original patentee and his lawful heirs, successors and assignees in perpetuity as incorporated herein as Exhibit "A" in Plaintiff's Affidavit in Proof of Claim. Pursuant to 43 U.S.C. § 83, the attached certified land patent is admissible as evidence of the full right, title, and interest conveyed from the United States. Attached herein as Exhibit "B" is the acceptance of said patent by the State of Florida before said Patent was vested to patentee, his heirs, successors and assignees. These documents stand as *prima facie* evidence of fee simple title and extinguishes jurisdictional claims by both the State of Florida and the United States.

14. The patent serves as an executed contract between the United States and the original patentee, protected under Article I, Section 10 of the Constitution for the United States of America, and operates as an ex officio quit claim deed of the highest evidentiary authority in land title.

15. As affirmed in *United States v. Winona & St. Peter R. Co., 165 U.S. 463 (1897)* and *Langdeau v. Hanes, 21 Wall. 521 (1874)*, land held under patent is not subject to later encumbrance or state interference, and once title has passed into private hands, the United States retains no jurisdiction or control over said land.

16. Neither the State of Florida nor the Department of Homeland Security, nor any agency of the United States, retains jurisdiction over land patented into private ownership, except in the narrow case of explicitly reserved rights, which do not apply in this instance.

17. The area proposed for federal use as an ICE detention site ("Everglades Alcatraz") lies squarely within private, patented land, and no evidence has been presented of federal ownership, lawful easement, or jurisdictional authority over the land.

18. A detention facility in the neighboring Big Cypress National Preserve in recent decades housed juvenile inmates for a period before being ordered closed. During the time of the facilities operation, it is reported that up to one hundred detainees escaped from the facility, one of whom, upon escaping, murdered a civilian with a pickaxe after escaping. The argument of the purported "Everglades Alcatraz" being escape proof is a sham argument. If one hundred juvenile adolescents possessed the ability to escape from a juvenile detention facility, through the challenging terrain of the Big Cypress National Preserve, then the question remains as to how many adult deportees are capable of accomplishing the same in the purported "Everglades Alcatraz", even if the Defendants had the standing to build the facility, which they do not. The assertion that this facility will be secure is a fantasy built on bureaucratic arrogance and a loss of memory on history.

19. Governor DeSantis issued EO 23-03 and its extension EO 24-269, purporting to seize sweeping land acquisition and emergency construction powers without legislative

approval, in violation of Florida's statutory and constitutional separation of powers. The Legislature explicitly declined to endorse or fund this action in special session, undermining any claimed legislative basis as evinced in Exhibit "C".

20. Attorney General James Uthmeier has publicly supported and advocated for the use of this property for the detention and incarceration of individuals by the Department of Homeland Security, notwithstanding the total lack of lawful In Rem jurisdiction.

## IV. Statement of Facts

21. The Defendants, acting under color of state and federal authority, have proposed and begun advancing a large-scale immigrant detention facility in a remote area of the Florida Everglades, unofficially referred to as the "Everglades Alcatraz."

22. The proposed site lies on and adjacent to land held under United States patent No.137, which falls outside the civil and regulatory jurisdiction of both the federal government and the State of Florida.

23. The facility is expected to house approximately 5,000 detainees and 200 staff. According to Occupational Safety and Health Administration (OSHA) standards, a facility of this size would require a minimum of 104 portable toilets. In the absence of sewer connections or water treatment infrastructure, these toilets would need to be serviced daily by heavy sanitation trucks operating in sensitive wetland areas.

24. Historical practices in military and detention contexts suggest that, lacking sewer systems, human waste may be managed through open-pit burning, burial, or holding tanks—all methods that present serious risks of groundwater contamination, pathogen dispersal, and surface runoff during Florida's frequent storms which is diametrically opposed and in

direct contradiction to the current Everglades Restoration Plan Initiative that has already been put into effect.

25. The proposed use of aircraft facilities at the site requires large-volume storage of jet fuels such as JP-8 or Jet-A, as well as the handling of aviation chemicals including de-icing agents, degreasers, and hydraulic fluids. These substances are known to release benzene, toluene, and heavy metals into the environment upon leakage, which is likely in a remote and unregulated setting, which is wholly inconsistent with the current Everglades Restoration Plan Initiative.

26. The Everglades is a globally recognized ecosystem that plays a vital role in recharging the Biscayne Aquifer, the primary source of drinking water for over 9 million Floridians. Contamination from untreated human waste or aviation chemicals risks irreversibly polluting this aquifer, causing long-term damage to public health and water security which is wholly incompatible with the intended Everglades Restoration Plan Initiative.

27. The site lies within one of the quietest and most ecologically sensitive soundscapes in North America. Aircraft operations, diesel trucks, construction equipment, and night lighting will disrupt native wildlife behavior, especially the mating, nesting, and migration of birds, amphibians, and reptiles that rely on undisturbed habitats which are in direct contradiction and wholly irreconcilable with the intended Everglades Restoration Plan Initiative.

28. The area is home to several endangered or protected species, including the Florida panther, wood stork, snail kite, manatee, bobcat, and various native reptiles. Construction of this facility would displace or destroy critical breeding zones and feeding corridors for these species which directly undermines the intended Everglades Restoration Plan Initiative.

29. The affected lands are also culturally and spiritually significant to the Miccosukee and Seminole tribes, whose historical stewardship and sacred traditions are tied directly to the uninterrupted preservation of the Everglades ecosystem as these tribes inhabit villages immediately adjacent to the subject matter and said tribes utilize these lands for ceremonial and traditional purposes. The intrusion of industrial detention infrastructure into these lands constitutes a cultural and environmental desecration and disaster.

30. President Donald J. Trump by his own admission has indicated that a great number of the deportees are violent criminals. Introducing violent criminals into this location where a great majority of the subject matter is immediately adjacent to indigenous tribes compromises the integrity and the safety of these communities and subjects its inhabitants to possible negative consequences as in the instance of the tried and failed Big Cypress detention facility herein previously mentioned.

31. Historical precedent shows that rushed, infrastructure-deficient federal projects often result in severe environmental contamination and decades-long cleanup. Sites such as Pease Air Force Base, Red Hill at Pearl Harbor, and the Rocky Mountain Arsenal became EPA Superfund sites due to fuel and waste mismanagement, costing taxpayers millions in remediation.

32. The Defendants' proposal operates as a gateway to broader developmental encroachment. Once justified for "temporary" government use, roads, power lines, utilities, and site clearance become permanent fixtures. These eventually invite residential developers, commercial zones, and industrial parks—irreversibly altering the character and ecological integrity of the Everglades.

33. There is no existing infrastructure for sewer, water treatment, hazardous waste containment, or aviation-grade environmental safeguards. Despite this, the Defendants continue to act with callous indifference, supporting and advancing the proposal with no environmental impact study, no tribal consultation, and no demonstration of jurisdiction over the patented property.

34. The proposed "Everglades Alcatraz" facility is not a temporary measure. It represents a permanent ecological, cultural, and legal injury to the Everglades and its surrounding communities.

## V. Constitutional Authority and Judicial Precedent

35. In *Marvin M. Brandt Revocable Trust v. United States, 572 U.S. 93 (2014)*, Chief Justice John Roberts, writing for the majority, delivered a powerful defense of private property rights—particularly when the federal government attempts to reassert control over land it previously conveyed.

36. When the United States patented the land to Brandt's father, it conveyed fee simple title to the land, subject to a railroad easement. Once that easement was extinguished, the land was unburdened, and the Brandt Trust held full title, just as it would for any other easement. *Brandt, 572 U.S. at 105.*

37. Once the Dade-Collier Jetport project was struck down by court order in 1970 and abandoned, said project initiation having been exercised through implied extra county jurisdiction, the easement to the State of Florida and its political subdivisions was also effectively extinguished and title by default merged back into the Irrevocable Living Trust held by the patentee, his heirs, successors and assignees *Nunc Pro Tunc* not the federal

government or its subsidiaries, and reclamation of the land just because the easement was no longer used became void on its face where proprietary ownership and rights to said property by the State of Florida and its political subdivisions were effectively extinguished.

38. A law repugnant to the Constitution is void *ab initio*; — *Marbury v. Madison, 5 U.S. 137, 177 (1803)*.

39. The Government loses in this case because it did not reserve any interest in the right of way in the patent it issued to the patentees' predecessors in title. The Court has long recognized that property rights are not left to the vagaries of what a government official might later think or intend.

40. Once the title has been confirmed and adjudicated, it is conclusive and not open to collateral attack. *Barker v. Harvey*, 181 U.S. 481 (1901). The issuance of a patent following a land grant adjudication creates a title beyond dispute, except for fraud or mistake in the issuing process. The question of title, having once been duly adjudicated by the tribunals established for that purpose, is not open to further contest.

41. Once a land grant is confirmed by the United States, and a patent is issued, the title is conclusive. The State of California could not override or second-guess the federal government's confirmation of private title in Summa Corp v. California. The United States' confirmation of title to private landowners was intended to be final and conclusive. The federal patent extinguishes any claim of the State based on the public trust doctrine. *Summa Corp. v. California, 466 U.S. 198 at 205-06 (1984)*.

42. The Court rejected California's argument that the land still belonged to the public trust (e.g., tidelands), holding that the federal confirmation of title extinguished any residual public rights the State may have claimed.

43. The Property Clause of the Constitution for the United States of America in Article IV Section 3 Clause 2 empowers Congress, not the States, to dispose of federal lands—and once disposed, title is complete and exclusive.

44. A patent is the highest evidence of title and is conclusive against the government and all claiming under junior patents or entries. *U.S. v. Stone, 69 U.S. at 535.*

45. Once the United States issues a patent, it relinquishes jurisdiction and control over the land—even it cannot reclaim or interfere with the lands use unless there was fraud or express reservation made.

## VI. Lawful Basis for a Cause of Action for Injunctive Relief

46. Plaintiff satisfies the four factors governing injunctive relief under *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008):

    (1) A likelihood of success on the merits.

    (2) Irreparable harm absent relief.

    (3) The balance of equities favors Plaintiff.

    (4) The public-private interest supports an injunction

47. Plaintiff has a likelihood of success on the merits based on:

    a. The clear federal constitutional authority confirming the patented land in question.

    b. The lack of In Rem jurisdiction held by any governmental body over patented lands without the consent of the holder.

c. The subject matter at issue lies within lands that were lawfully conveyed by the United States of America via Letters Patent, issued under its plenary authority pursuant to the Acts of Congress governing the disposition of public lands. Such Patent operates in law as an ex officio Quit Claim Deed, effecting a complete alienation of both title and jurisdiction from the United States to the transferee Sovereign—in this case, the patentee, his heirs, successors and assignees.

d. Upon statehood and admission into the Union, Florida accepted said lands under the Equal Footing Doctrine and the enabling acts of Congress. However, upon lawful grant and transfer by the State of Florida via the Board of Trustees of the Internal Improvement Trust Fund into the private, under color of public authority and in accordance with State conveyance law, all residual jurisdiction vested in the State of Florida was likewise relinquished. Thus, by perfected patent and subsequent lawful conveyance, the land has been placed entirely into the private domain, beyond the reach of ordinary administrative or political jurisdiction by the full execution of the conveyance by the State of Florida under Seal-binding under the law governing swamp and overflowed lands based on lawful authority in exchange for drainage obligations tied to swamp reclamations which were satisfied finalizing the transaction and officiating the jurisdictional location. As such, no federal or state agency retains rightful authority to obstruct or interfere with the proprietary rights of said conveyance.

e. Said Patent functions in law as an ex officio quitclaim deed as herein stated, perfecting the divestiture of both legal and equitable title and territorial jurisdiction from the United States and its subsidiaries.

 f. Upon lawful grant by the State into private hands through recorded conveyances, all residual authority of the State of Florida was likewise extinguished in *Esse*. Thus, the land subject to this complaint exists entirely within the private domain, beyond the jurisdiction of both the United States Government and the State of Florida and its political subdivisions, not subject to discretionary interference.

 g. Jurisdiction over the subject matter is barred by an agreement of the parties where public officers cannot create or presume a private agreement (e.g., policy, regulation, internal checklist) that alters jurisdiction or nullifies constitutional property rights, especially where the United States has completely alienated title and jurisdiction via patent as did the State of Florida upon transferring said rights to the patentee, his heirs, successors and assignees.

## VII. Potential Injury

48. The conduct of Governor Ron DeSantis by making a political determination in this case is not isolated, but part of a demonstrable pattern of executive overreach and disregard for vested property rights and constitutional boundaries. As seen in the well-documented public dispute with The Walt Disney Company, Governor DeSantis utilized State power to retaliate against a private entity for exercising its rights, including the restructuring of long-established governance agreements and the attempted dissolution of property protections under the guise of political reprisal. Similarly, here, the Governor and associated State agencies have attempted to encroach upon lands held under federal patent—an even higher order of vested right—without jurisdiction, consent, or constitutional basis. These actions underscore an ongoing pattern of State hostility toward protected private property interests,

warranting heightened judicial scrutiny and immediate injunctive relief to prevent irreparable harm.

49. The Governor's pattern of using State machinery to impose ideological or political will upon property holders—regardless of equitable title or constitutional protections—raises serious questions under the Equal Protection Clause and Florida's own Constitution under Article I, Section 2, which guarantees the right to acquire and protect property. If the State of Florida is permitted to subvert constitutional title and jurisdiction through coercion, intimidation, or politicized development, the rights of all property holders stand threatened.

50. Unauthorized use and occupation of the land will constitute a continuing trespass, destruction of property value, and a violation of constitutional rights.

51. There is no adequate remedy at law because:

    a. The injury is ongoing and affects constitutionally protected property rights.

    b. Monetary damages cannot remedy the infringement of patent title and sovereign status.

52. The balance of equities as well as public and private interests strongly favor granting the injunction to prevent government overreach and to uphold the rule of law.

## VIII. This Courts Power to Grant Relief

53. Plaintiff incorporates by reference lines 1-5, (Jurisdiction and Venue) affirming this Court's jurisdiction under 28 U.S.C. § 1331-Federal Question Jurisdiction, empowering this Court to grant Injunctive Relief and halt any violations of provisions of law enforced by lines 35-45 (Constitutional Authority and Judicial Precedent), which is the Full Faith and Credit that has been given in relation to patented and private property rights.

54. Moreover, as officers within a federal judicial district pursuant to 28 U.S.C. § 89(a), and subject to the jurisdiction thereof, the Defendants have exercised authority subject to the constitutional supremacy of the United States, further implicating the Supremacy Clause. The Court, in the exercise of its equitable jurisdiction, may award injunctive relief and remedy any violation of any law enforced by the Constitution of the United States of America and any Act of Congress.

### Reservation of Rights

55. Plaintiff Joshua-Michael Van Schaick expressly reserves and retains all Rights, Privileges and Immunities Pursuant to Article IV Section 2 of the Constitution for the United States of America and all Rights pursuant to Article I Section 1 of the Florida Constitution Without Prejudice.

### IX. Prayer for Relief

Wherefore, Plaintiff respectfully requests that this Honorable Court award such further relief as is just and proper, including but not limited to:

A. Enter a Preliminary Injunction enjoining the Defendant(s) from authorizing, advancing, or supporting the development or use of the patented land for any governmental detention, incarceration, or enforcement activity, including but not limited to the proposed "Everglades Alcatraz".

B. Restrain the Defendants from taking any further actions to develop or utilize the subject property.

C. Enter a Preliminary and Permanent Injunction enjoining Defendants from authorizing, supporting, or constructing the proposed facility by virtue of a sovereign land patent.

D. Order the relocation of said facility to a lawful jurisdiction, such as an insular possession of the United States or a decommissioned site.

E. Issue injunctive relief in the nature of ejectment, compelling all agents, contractors, or entities acting under the authority of the Defendants to vacate the subject land and enjoin all further occupation or unauthorized and unlawful entry.

F. An award of costs incurred and equitable compensation for time, labor, and resources expended in the prosecution of this action as may be determined appropriate under Florida Rule of Civil Procedure 1.525, 42 U.S. § 1988, and the Court's inherent authority to do equity.

G. Grant any further relief deemed just and proper.

## Verification

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Respectfully filed,



Dated: June 26, 2025

Joshua-Michael Van Schaick, Plaintiff

*In Rem Suam, Propria Persona, Sui Juris*

Native state Citizen of Florida

28 U.S.C. 1746(1)

Without Prejudice

739 Washington Avenue

Homestead, Florida 33030-1332

In the United States of America

Telephone: 305-783-6544

Email: jvanschaick20@gmail.com