IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOSHUA-MICHAEL VAN SCHAICK,

    Plaintiff,

v.     Case No.: 4:25-cv-00271-RH/MJF

RON DESANTIS, in his official capacity as Governor of the State of Florida, JAMES UTHMEIER, in his official capacity as Attorney General of the State of Florida, FLORIDA DEPARTMENT OF MANAGEMENT SERVICES, FLORIDA DEPARTMENT OF ENVIRONMENATL PROTECTION, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES IMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants.

_____/

**STATE DEFENDANTS' MOTION TO DISMISS VERIFIED
COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTION**

Defendants Ron DeSantis, in his official capacity as Governor of the State of Florida, James Uthmeier, in his official capacity as Attorney General of the State of Florida, the Florida Department of Management Services (DMS), and the Florida Department of Environmental Protection (DEP) (collectively the State Defendants)

1

move to dismiss Plaintiff's Verified Complaint for Preliminary and Permanent Injunction and as good cause therefore would show:

The land on which the disputed detention center is located was transferred to the State of Florida by the United States government on April 30, 1903 as a part of Swamp and Overflowed Land Patent No. 137. See DE 3, Ex. A, p. 5 of 9; *Hardee v. Horton*, 90 Fla. 452, 108 So. 189, 191 (1925) (setting forth language of Patent No. 137); *Martin v. Busch,* 93 Fla. 535, 112 So. 274, 278 (1927) (Patent No. 137, known as the Everglades patent, "was dated April 29, 1903 and was authorized by the Swamp Land Grant Act of September 28, 1850."). Swamp and Overflowed Lands Patent No. 137 conveyed that vast, unsurveyed area known as the Everglades, containing an estimated 2,862,280 acres, from the United States to the State of Florida. *Hardee v. Horton*, 108 So. at 191.

Florida in turn offered the land received from the United States pursuant to Swamp and Overflowed Patents for sale to private interests who would presumably improve it and put it to productive, and taxable, use. The Complaint does not however contain factual allegations plausibly showing that the specific land on which the detention facility is located is currently privately held, or that the State does not have legal authority to operate the detention facility on that property.

Plaintiff claims to appear in this action "*In Rem Suam*,"[1] DE 1 at 1, and alleges that as "a Native state Citizen of Florida, he is "a lawful successor in interest and a beneficial and equitable title holder of rights derived under United States Patent No. 137." DE 1 at ¶ 6. The Complaint does not however offer any factual allegations showing how Plaintiff came to acquire his alleged beneficial and equitable interest or of the rights he claims to hold under Patent No. 137. Nor does the Complaint identify the boundaries of the property that Plaintiff claims to have an interest in, or if those boundaries incorporate any portion of the detention facility.

The Complaint further alleges that title to the land on which the detention center sits is held by an "Irrevocable Living Trust held by the patentee, his heirs, successors and assigns…" DE 1 at ¶ 37. The Complaint does not identify the alleged trust or its beneficiaries, and does not identify the relevant trust documents or attach them as exhibits. Nor does Plaintiff identify the alleged patentee or the patentee's alleged heirs, successors and assigns, or explain how the alleged trust came into ownership of the land. To be sure, the complaint does not allege that Plaintiff is an heir, successor, or assign of the alleged irrevocable living trust. In short, the Complaint implies, but does not expressly allege, that the Dade-Collier Training and

---

[1] *In rem suam* translates to "regarding one's own property; for one's own advantage." *Black's Law Dictionary* (11th Ed. 2019).

3

Transition Airport is privately owned and yet does not identify the owner or set forth a chain of title.

Plaintiff's Complaint attempts to set forth claims for preliminary and permanent injunctions to prohibit Defendants from maintaining and operating a detention facility at the site of the Dade-Collier Training and Transition Airport. DE 1 at pp.1-2, ¶¶ 37, pp. 16-17. The Complaint must be dismissed as to all State Defendants for the following reasons: 1) Plaintiff fails to establish Article III standing and this Court therefore lacks subject matter jurisdiction; 2) the Complaint fails to allege a claim for which relief may be granted as required by Federal Rule of Civil Procedure 12(b)(6); 3) the Complaint fails to establish federal question jurisdiction; and 4) Plaintiff's claims are barred by operation of Eleventh Amendment immunity.

## MEMORANDUM OF LAW

### I. Plaintiff lacks Article III Standing and Therefore This Court Lacks Subject Matter Jurisdiction.

Federal courts have "an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute." *Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1245 (11th Cir. 2020); *see also Warth v. Seldin,* 422 U.S. 490, 498 (1975). "Under Article III of the Constitution, the jurisdiction of federal courts encompasses only 'Cases' and 'Controversies.'" U.S. Const. art. III, § 2; *City of South Miami v. Governor, State of Florida*, 65 F.4th 631 (11th Cir. 2023). "To have

a case or controversy, a litigant must establish that he has standing, which requires proof of three elements." *Id.,* quoting *Jacobson*, 974 F.3d at 1245 (cleaned up). "The litigant must prove (1) an injury in fact that (2) is fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision." *Jacobson*, 974 F.3d at 1245. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008).

### A. Plaintiff has not suffered an injury in fact.

A party invoking federal jurisdiction "must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "An injury is particularized when it affects the plaintiff in a personal and individual way. To be concrete, the injury must be real and not abstract." *Sierra v. City of Hallandale Beach, Fla.,* 996 F.3d 1110, 1113 (11th Cir. 2021) (cleaned up). Plaintiff has failed to allege that he has a recognizable legal or equitable interest in the real property on which the detention facility is located and therefore cannot show that he has suffered a concrete and particularized, actual or imminent injury in fact. As a result, Plaintiff has failed to

establish Article III standing and this Court does not have subject matter jurisdiction over this matter.

The issue of establishing standing to claim ownership of real property arises frequently in the context of civil forfeiture proceedings. *See U.S. v. All Funds in the Account of Property Futures, Inc.,* 820 F. Supp. 2d 1305 (S.D. Fla. 2011) ("[I]t's generally recognized that the sort of property interest giving rise to standing is broadly interpreted to include [that held by] any person with a recognizable legal or equitable interest in the property seized.") (cleaned up); *U.S. v. Real Property Assoc'd with First Beneficial Mort. Corp.*, 2009 WL 1035233, at *3 (W.D.N.C. April 16, 2009). In *All Funds*, the claimants owned minority interests in LLCs, which in turn held title to the property, including four parcels of real property, which was subject to the forfeiture proceeding. *All Funds*, 820 F. Supp. 2d at 1311. The Court held that like corporate stockholders, the claimants holding minority interests in the LLCs did not have a recognizable legal or equitable interest in the real property and therefore lacked Article III standing to challenge the forfeiture proceeding. *Id*. at 1328-29.

Plaintiff claims to be a "lawful successor in interest and a beneficial and equitable title holder of rights derived under United States Patent No. 137." DE 1 at ¶ 6. Plaintiff does not explain what those alleged rights are, or how they are derived from Patent No. 137. Significantly, Plaintiff does not claim to hold a recognizable

legal or equitable interest in the real property on which the detention facility is located. The allegations of paragraph 6 of the Complaint therefore fail to establish that Plaintiff has suffered an injury as required to confer Article III standing.

Plaintiff further alleges that Patent No. 137 transferred "the land from the United States to the original patentee and his lawful heirs, successors, or assigns." DE 1 at ¶ 13. However, Plaintiff acknowledges that the "original patentee" of Patent No. 137 was the State of Florida. DE 1 at ¶ 47f, DE3, Ex. A, Ex. B. The Complaint does not allege that Plaintiff is a lawful heir, successor, or assign of the State of Florida, or otherwise explain why he has standing to bring a claim on behalf of any individual or entity who may be a lawful heir, successor, or assign.[2] The allegations of paragraph 13 of the Complaint also fail to establish that Plaintiff has suffered an injury as required for Article III standing.

Finally, Plaintiff alleges that title to the real property on which the detention center is located "merged back into the Irrevocable Living Trust held by the patentee,

---

[2] Plaintiff has not amended his Complaint. He has however filed an after-the-fact "Supplemental Statement of Title Record and Clarification in Support of Judicial Notice", DE 21, and "Plaintiff's Notice of Constructive Trusteeship and Standing to Enforce Injunctive Relief," DE 22. DE 21 asserts that the land on which the detention facility now sits was conveyed to Henry C. Butcher and his wife by the Board on June 30, 1903. No subsequent chain of title is provided. Even if assumed true, this allegation does not explain what interest Plaintiff holds in the land or why he has Article III standing to bring this claim. In DE 22 Plaintiff asserts that he is appearing "not in his personal capacity, but as Constructive Trustee Pro Tempore, over Trust Property arising from United States Land Patent No. 137." Plaintiff does not explain what this means, or why such a status, if true, would provide him Article III standing.

his heirs, successors and assigns." DE 1 at ¶ 37. Plaintiff does not identify the alleged trust or even claim to be a beneficiary. However, if the property was held by a lawfully created trust then that trust, and not Plaintiff, is the proper party to bring this lawsuit. As a beneficiary of the alleged trust, Plaintiff would have no more claim to Article III standing than the minority LLC members in the *All Funds* case discussed above. These allegations also fail to establish that Plaintiff has suffered an injury as required for Article III standing.

### B. Because Plaintiff cannot establish that he has or will suffer an injury in fact, he cannot establish traceability or redressability.

In addition to having suffered an injury in fact, Plaintiff must show a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Lujan*, 504 U.S. at 560 (cleaned up). Finally "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Id*. at 561 (cleaned up). It goes without saying that because Plaintiff has failed to allege a particularized, concrete, actual or imminent injury, he cannot establish an injury traceable to any action of the State Defendants. To be sure, the Complaint makes no specific reference to DMS and DEP other than general introductions in paragraphs 9 and 10. And other than general introductions in paragraphs 7 and 8, the Complaint makes no specific reference to Governor DeSantis or Attorney General Uthmeier other than paragraphs 19 and 20, which make only general allegations that they have supported the creation

8

of the detention center. There are no allegations which, if true, would establish that any injury suffered by Plaintiff is traceable to any of the State Defendants, or that a judgment against any of them would redress any such injury.

Nor can the injunctive relief sought by Plaintiff redress a concrete, particularized injury, as Plaintiff has suffered no such injury. Consequently, Plaintiff cannot establish Article III standing and this Court lacks subject matter jurisdiction. Plaintiff's Complaint should be dismissed.

### II. Plaintiff fails to state a cause of action for which relief can be granted.

In order to state a cause of action for which relief can be granted as required by Fed. R. Civ. P. 12(b)(6), a complaint need not contain detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. Fed. R. Civ. P. 8(a)(2) requires a short and plain statement of the claim to "give the defendant fair notice of what…the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Plaintiff's Complaint consists of nothing more than labels and conclusions, many of them nonsensical, and falls far short of the standard necessary to state a claim to relief that is plausible on its face. The Complaint alleges that by virtue of Patent No. 137, "the land" is not only privately owned but is beyond "the administrative or political jurisdiction" of the State of Florida. DE 1 at ¶ 47d. Plaintiff asserts that Patent No. 137 "transferred the right, title, and interest in the land from the United States to the original patentee and his lawful heirs, successors, and assigns in perpetuity…," DE 1 at ¶ 13, although exhibits A and B to the Complaint establish conclusively that the "patentee" of Patent No. 137 was the State of Florida.

Where the allegations of a complaint are contradicted by exhibits attached to the complaint, the plain meaning of the exhibits control. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Schooley v. Option One Mort. Corp.*, No. 5:21-cv-219-AW/MJF, 2022 WL 4803208 (N.D. Fla. October 3, 2022), report and recommendation adopted, No. 5:21-cv-219-AW/MJF, 2022 WL 4856326 (N.D. Fla. Oct. 2, 2022). Patent No. 137 and the State of Florida's acceptance thereof, DE 3, Ex. A and Ex. B, establish that the Everglades, including the land on which the detention facility is located, was granted to the State of Florida and not into private ownership. The Complaint alleges that "[u]pon lawful grant by the State of Florida into private hands through recorded conveyances, all residual authority of the State

of Florida was likewise extinguished in Esse," DE 1 at ¶ 47f, but contains no allegation identifying the private party to whom the property was allegedly conveyed. Nor does the Complaint allege a chain of title by which Plaintiff, or any other private individual or entity, claims to have acquired an interest in the property.

Further, Plaintiff's claim that he "is a lawful successor in interest and a beneficial and equitable title holder of rights derived under United States Patent No. 137," DE 1 at ¶ 6, is a legal conclusion unsupported by any factual allegations. Plaintiff apparently claims to hold his undefined property rights through an irrevocable living trust, DE 1 at ¶ 37, but this is yet another legal conclusion unsupported by any factual allegations or any evidence of a trust document. Significantly, if the real property at issue was held by a trust, that trust and not Plaintiff would be the appropriate party to bring this action. *See Danny Lewin Boykins Express Trust v. Markgunn*, No. 8:22-cv-54-MSS-TGW, 2022 WL 2306871 *1 (M.D. Fla. April 6, 2022).

Finally, the Complaint constitutes a shotgun pleading in that it is "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland v. Palm Beach Cnty Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015). The Complaint is also a shotgun pleading for the additional reason that it "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which

11

acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323.

In short, Plaintiff offers no factual allegations showing how he derived his claimed rights under the patent, or the location and legal description of the land in which he claims to have acquired those rights, or that he is the appropriate party to bring this claim. The factual allegations of the Complaint are nothing more than dubious legal assertions and do not provide the State Defendants fair notice of the grounds upon which Plaintiff's claims rest.

### III. Plaintiff's Claims Against the State Defendants are Barred by Eleventh Amendment Immunity.

The Eleventh Amendment to the Constitution of the United States directs that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). The U.S. Supreme Court has consistently held that absent waiver of Eleventh Amendment immunity, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63, (1974). The sovereign immunity from suit in federal courts afforded states by the Eleventh Amendment applies equally to agencies acting under their control. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. at 144.

"Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" *Id.*, quoting *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 480 (1987) (plurality opinion).

The Complaint acknowledges that DMS and DEP are agencies of Florida state government, DE 1 at ¶¶ 9, 10, to which Eleventh Amendment immunity apply. DMS and DEP have not waived Eleventh Amendment immunity, and the Complaint is devoid of any allegation to the contrary. Nor may Plaintiff avoid application of Eleventh Amendment immunity by seeking injunctive relief against DMS and DEP. "[W]e have often made it clear that the relief sought by a Plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe of Florida,* 517 U.S. at 58; *see also Cory v. White*, 457 U.S. 85, 90 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money is sought."); *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 48 (1994) (Eleventh Amendment does not exist solely to "preven[t] federal-court judgments that must be paid out of a State's treasury"). To the contrary, the Eleventh Amendment serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct and Sewer Auth.,* 506 U.S. at 146.

*Ex parte Young*, 209 U.S. 123 (1908) provides a narrow exception to Eleventh Amendment immunity, permitting suit against state officers in federal court to prospectively enjoin continuing violations of a right arising under the Constitution or laws of the United States. Id. at 158-59. *Edelman v. Jordan*, 415 U.S. at 664. However, the *Ex parte Young* exception cannot be applied to Governor DeSantis or Attorney General Uthmeier in this case. First, *Ex parte Young* does not allow Plaintiff to bring claims against Governor DeSantis and Attorney General Uthmeier for damages, retrospective relief, or to adjudicate the legality of past conduct. *Summit Med. Assoc. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Nor does the *Ex parte Young* exception apply '[i]f the prospective relief sought is the functional equivalent of money damages." *Id*. Finally, "the *Ex parte Young* doctrine does not apply where the prospective equitable relief sought 'implicates special sovereignty interests.'" *Id*., quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997).

As a threshold matter, the allegations of the Complaint do not implicate an ongoing violation of the Constitution and laws of the Unites States on the part of Governor DeSantis and Attorney General Uthmeier, and therefore the *Ex parte Young* exception cannot apply here. Further, the continued operation and maintenance of the detention facility at issue in this case "uniquely implicate Florida's sovereign interests." *See Coeur d'Alene Tribe*, 521 U.S. at 283. Finally, the Complaint requests that this Court enter judgment against all Defendants to "[o]rder

14

the relocation of said facility," DE 1 at p. 17, and "[i]ssue injunctive relief in the nature of ejectment." Id. Those forms of prospective relief are the functional equivalent of money damages in that they will require outlays from the public fisc, and the *Ex parte Young* doctrine cannot be applied here for those reasons as well.

### IV.     Plaintiff Has Failed to Establish Federal Question Jurisdiction.

Plaintiff erroneously asserts that this Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). DE 1 at ¶¶ 1, 2. 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff asserts that "courts have applied federal question jurisdiction under [28 U.S.C.] § 1331 to land patents because they fall under the Property Clause of Article IV Section 3 Clause 2 of the Constitution for the United States of America." DE 1 at ¶ 2. Plaintiff's assertion is incorrect.

"Once patent issues, the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent." *Oneida Indian Nation of N.Y. State v. Oneida Cnty, N.Y.,* 414 U.S. 661, 676-77 (1974) (quoting *Joy v. City of St. Louis*, 201 U.S. 332, 342-43(1906)); *see also Summa Corp. v. California Ex Rel. State Lands Com'n*, 466 U.S. 198, 201 n. 1 ("[Q]uestions of riparian water rights

15

under patents issued under the 1851 Act did not raise a substantial federal question merely because the conflicting claims were based upon such patents."). Even if Plaintiff's Complaint raised a valid claim, and it does not, that claim would be a question of Florida state property law to be resolved in a Florida state court.

28 U.S.C. § 1338(a) provides that "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks." Plaintiff acknowledges that § 1338(a) applies to "inventions and copyrights," DE 1 at ¶ 2, not federal land patents, so that statute clearly does not provide federal question jurisdiction over Plaintiff's claims.

Plaintiff nevertheless argues that "Florida courts also recognize that issues concerning the validity, construction, or effect of land patents are matters of federal law, not state law." DE 1 at ¶ 3. Plaintiff's argument is completely wrong. Plaintiff inexplicably cites to *Andrus v. Charlestone Stone Products Co., Inc.*, 436 U.S. 604 (1978), to support this proposition. *Andrus* is a decision of the United States Supreme Court, not a Florida court, and concerned a mining claim, not the "validity, construction, or effect" of a land patent. Further, unlike the *Summa Corp.* case, the case at bar does not turn on the proper construction of an Act of Congress providing for land patents. *Summa Corp.,* 466 U.S. at 201 n. 1. As the Supreme Court noted in *Summa Corp*. and *Oneida Indian Nation*, questions of property rights are to be

16

decided in state courts under state law notwithstanding that the property in question was initially the subject of a federal land patent. *Summa Corp.,* 466 U.S. at 201 n. 1; *Oneida Indian Nation*, 414 U.S. 676-77. Plaintiff's contention that this case presents a federal question simply because the land in question was initially part of a federal land patent is without merit.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed.

Respectfully submitted,

JAMES UTHMEIER
ATTORNEY GENERAL

*/s/ Timothy L. Newhall*
Timothy L. Newhall
Fla. Bar No. 391255
Special Counsel
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Telephone: (850) 414-3300
timothy.newhall@myfloridalegal.com

*Counsel for State Defendants*

## WORD LIMIT CERTIFICATION

The undersigned certifies that this document complies with the 8,000 word limit set forth in Local Rule 7.1(F) and contains 4.013 words.

*/s/ Timothy L. Newhall*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served via the Court's CM/ECF system, and by email to Plaintiff Joshus-Michael Van Schaick at jvanschaick20@gmail.com, this 26th day of August 2025.

*/s/ Timothy L. Newhall*